UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHE SOULIER, | : |
| Petitioner, | : CASE NO.: 2:20-cv-04720-MCA-MAH |
| v. | : |
| AKIKO MATSUMOTO, | : |
| Respondent. | : |

**PETITIONER'S SUMMATION BRIEF**
**AND**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**MICHAEL S. GREEN, ESQ.**
**NJ Attorney ID 005141998**
**GREEN & ASSOCIATES, LLC**
Attorneys at Law
522 Route 18, Suite 5
East Brunswick, New Jersey 08816
Tel: 732-390-5900
Attorney for Petitioner,
Christopher Soulier

## **TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION AND SUMMATION……………………………………...….4

II. PROCEDURAL HISTORY…………………………………………………...……..6

III. STATEMENT OF FACTS ……………………………………………………....…6

    A. PROPOSED FINDINGS OF FACT……………………………….……...…7
.
IV. LEGAL ARGUMENT……………………………………………….....….……13

    A. PROPOSED CONCLUSIONS OF LAW……………………………………15

V. CONCLUSION……………………………………………………….……...……...19

# **TABLE OF AUTHORITIES**

**Cases**                                                                       **PAGE**

*Feder v. Evans-Feder*, 63 F.3d 217, 224 (3d Cir. 1995)……………………………………...17,18

*Garcia v. Penelo*, 808 F.3d 1158, 1169 (7th Cir. 2015)……………………………………..…14

*Gitter v. Gitter*, 396 F.3d 124, 132–33 (2d Cir. 2005)……………………...…………………17

*Karpenko v. Leendertz*, 619 F.3d 259, 263 (3d Cir. 2010)……………...………………15,16

*Karkkainen v. Kovalchuk*, 445 F.3d 280, 287 (3d Cir.2006)…………………………………15,16

*Lozano v. Montoya Alvarez*, 134 S.Ct. 1224, 1231 (2014)…………………….…………19

*Monasky v. Taglieri*, 140 S.Ct. 719 (2020)……………………………………...……13

*Paulus v. Cordero*, No. 12-986, 2012 U.S.Dist. LEXIS 90374, at *8
(M.D. Pa. June 29, 2012)……………………………………………………..……16

*Romanov v. Soto*, (3:21-cv-779-MMH-MCR, U.S.D.C., M.D.Fla., Feb.7, 2022)…………...13

*Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 270 (3d Cir. 2007)…..…………………..14,16

*Saltos v. Severino*, (D.N.J. July 25, 2018), Civil Action No.: 18-8704, (JLL)……………….17

*Silverman v. Silverman*, 338 F.3d 886, 898 (8th Cir. 2003)…………………………...…..18

*Whiting v. Krassner, 391 F.3d 540 at 542 (3d Cir. 2004, 391)*……………………...……..17

**Rules, Statutes and Other Authorities**

22 U.S.C. § 9003……………………………………………………………….………..…15,16

Hague Convention, Article 3…………………………………………………..…….…......15

Hague Convention, Article 12…………………………………………………....................18

## I.  INTRODUCTION AND SUMMATION

The facts and the law of the case are clear, pursuant to the Hague Convention, this Court should return the children of the parties to their habitual residence at the time of the wrongful retention by the Respondent on July 10, 2019.

Under the Hague Convention and U.S. Statute and case law, the habitual residence at the time of the wrongful retention was Belgium.

At trial, the testimony of the parties and witnesses, including the children's pediatrician and paternal grandmother, and the documentary evidence presented confirmed that the parties had a <u>demonstrated shared intent</u> for their children to temporarily go to school in New Jersey for one year and to return on July 10, 2019 with a written and signed agreement to this effect dated December 30, 2018 and the Respondent had taken the initiative on her own accord to registering her and the children as temporarily leaving from Belgium in August 2018.  The testimony and relevant actions of the Petitioner were fully aligned with the shared intent that his Wife and the children were returning home as of the summer of 2019, solving in good faith the schooling issue that initially triggered the 1-year trip to New Jersey.

And, the Respondent admitted as much in her testimony, agreeing that without the Petitioner finding employment in New Jersey, which Petitioner confirmed in his testimony was not possible at the time, the shared intent of the parties was for the children only to be in New Jersey temporarily.  Her actions confirm as much, in that her employment, car and living arrangements were all temporary that year.

Therefore, <u>the perspective of the children</u> as to their "trip" to New Jersey <u>was that it was temporary</u>.  The children could not have acclimatized to New Jersey in that year and at the time of the wrongful retention, with the understanding and perspective that their stay was a temporary

4

one. Most of their belongings were left in Belgium, at their home and in their bedrooms where they lived all their lives, as were their schools and friends that had a party for them before their well-known one year trip to New Jersey. Their paternal grandparents, uncles, aunts, and cousins live nearby in France, where the beach and country vacation homes are that they stayed at with their paternal family throughout their lives. The parties' youngest child, <u>only four years old at the time of the wrongful retention</u> on July 10, 2019 was <u>simply too young to have acclimatized</u> to New Jersey, as was arguably the parties' oldest daughter, who was <u>only nine years old at the time of the wrongful retention</u>, and is only twelve years old today.

Importantly, the parties' daughter's interview and testimony at trial indicated that <u>she did not have an objection to returning to Belgium</u>. She had only mild concerns about its effect on her friends and her level of fluency in French, a language that trial testimony by witnesses confirmed she exclusively used with her paternal grandparents, her pediatrician and when she attended French speaking daycare.

In addition, pursuant to the Hague Convention, the Respondent's deceit and unjustifiable conduct, by wrongfully retaining the children in the United States, should not be rewarded because she gained the benefit and leverage of lengthy litigation and an unforeseen Covid-19 crisis.

Therefore, pursuant to the Hague Convention and U.S. Statute and case law, and considering the "totality of circumstances" and common sense, the children should be returned to Belgium. The totality of circumstances includes: (1) the demonstrated <u>shared intent</u> of the parties and shared settled purpose, when the children left for New Jersey in August 2018 and December 2018, was that the children return to Belgium on July 10, 2019, thus the habitual residence of the children continued to be Belgium <u>at the time of the wrongful retention</u> of the

parties' children on July 10, 2019; (2) these young children had a "temporary" perspective as to their trip to New Jersey and consequent lack of acclimatization to New Jersey in 2018-2019, again supporting a finding that the habitual residence of the children at the time of the wrongful retention was Belgium; (3) the <u>lack of any objection today</u> by the children to return; and, (4) the return to Belgium would allow the children to have ready access to their paternal grandparents and paternal extended family in France and <u>the rich, cosmopolitan life they led</u> of a bilingual education, vacations to the beaches of France and skiing in the Alps, as opposed to their only extended family in New Jersey being their maternal grandmother.

<u>Common sense demands</u> that the children should be returned to Belgium, their habitual residence at the time of the wrongful retention, where they will once again be in their home where they grew up and be able to be with their father, their loving paternal grandparents that are both retired physicians, their extended paternal family in Paris and their friends in Brussels. The Respondent could elect to return to Belgium without any constraints, seek employment and be an integral part in the lives of the parties' children.

## II.   PROCEDURAL HISTORY

The procedural history is fully set forth in Petitioner's Procedural History in the Joint Proposed Final Pre-Trial Conference Order of April 25, 2022, incorporated herein by reference.

The trial in this matter was held on April 27, 2022, April 28, 2022 and April 29, 2022 before this Court.

## III.   STATEMENT OF FACTS

Petitioner, in part, relies on his Hague Convention Petition filed with this Court on April 21, 2020, as to the facts of this case, in which he is seeking the return of the children from the U.S. to Belgium and Petitioner's Statement of Facts, Stipulated Facts and Petitioner's Contested

Facts in the Joint Proposed Final Pre-Trial Conference Order of April 25, 2022, incorporated herein by reference.

As to the facts illuminated at trial, demonstrated by the testimony of witnesses and documentary evidence, they support and confirm that the habitual residence of the children at the time of the wrongful taking on July 10, 2019 was Belgium and that there was no objection by the children to being returned to Belgium. (See attached trial transcript **Exhibits T1, T2 and T3** (T1 - Trial Transcript Volume 1, April 27, 2020, pgs 1-219; T2 -Trial Transcript Volume 2, April 28, 2020, pgs 1-290; T3- Trial Transcript Volume 3, April 29, 2020, pgs 1-44).

### A. PROPOSED FINDINGS OF FACT

This Court should find the following findings of fact:

1. The children of the parties' were born in Brussels, Belgium and lived their entire lives in Brussels, Belgium before August 2018. See T1, pg. 22 ln 17-22; T2, pg.221 ln 7-10.

2. The parties children are French and U.S. citizens and citizens of the European Union. See T1, pg.62 ln 6 – pg. 64 ln 3.

3. The parties lived together for fifteen years in Brussels, Belgium, after their marriage. See T1, pg. 21 ln 9-21.

4. Both of the children of the parties' attended French speaking daycare. See T1, pg. 42, ln 2-7; T2, pg. 264 ln 3-5.

5. The children of the parties spoke exclusively French to their pediatrician and grandmother. See T1, pg. 116 ln 10-17; T2, pg. 40 ln 6-20; T2, pg. 46 ln 15-16; T3, pg 40 ln 4-26, T3, pg. 10 ln 5-10.

6. The children's perspective on travelling to New Jersey in August 2018 was that it was a temporary trip for one year. See T1, pg. 97 ln 18-pg.98 ln 12; T2, pg. 249 ln 6-9.

7. The parties' daughter had friends in Brussels. See T1, pg. 29 ln 15 – pg. 30 ln 4; T2, pg. 257 ln 10-12.

8. It was understood by the parties' friends in Brussels, family in Paris and the children's pediatrician that the trip to New Jersey beginning in August 2018 was to be temporary and only for one year. See T1, pg. 60 ln 6-22; T2, pg. 23, ln 19-22; T2, pg. 38 ln 17- pg. 39 ln 4; T2, pg. 10 ln 20 – pg. 11 ln 11; T2 pg. 34 ln 3-5; T3, pg. 38 ln 7-20.

9. The parties co-signed in 2016 a nine-year lease for their home in Brussels prior to the trip to New Jersey in August of 2018. See T1, pg. 23 ln 7-21.

10. The parties' daughter was thrown a party by her friends in Brussels before she left in August 2018. See T2, pg. 248 ln 24- pg. 249 ln 5. ln 7-21.

11. The parties' children spent vacations with their paternal grandparents and extended paternal family, including their two uncles and aunts and their children, in vacation homes on the beach and in the countryside of France. See T1, pg 210 ln 7 – 15; T3, pg 35, ln 14-25.

12. The parties' children visited with their paternal grandparents and extended family in Paris, France and their paternal grandparents visited with them in Brussels. See T1, pg. 30 ln 5016; T1, pg. 32 ln 14-pg. 33 ln 2; T1, pg. 162 ln 2-pg. 163 ln 1.

13. The parties' daughter had dance lessons, went horseback riding, sailing and skiing, while living in Belgium. See T1, pg. 28 ln 19- pg. 29 ln 14; T1, pg. 205 ln 11- 21; T2, pg. 37 ln 11 – pg. 38 ln 10; T2, pg. 256 ln 20 – pg. 257 ln 9.

14. The Respondent registered her and the children as leaving Belgium "temporarily" in August 2018. See P2, T1, pg. 58 ln 15 – pg. ln 5; T1, pg. 61 ln 8-19.

15. The Petitioner signed his permission for the children to take a "trip" to New Jersey in August of 2018. See P1/J1; T1, pg. 55 ln 12 – pg. 58 ln14.

16. Most of the children's belongings were left behind in Belgium in their bedrooms of their home in Brussels, when they left for their trip to New Jersey in August of 2018. See T1, pg. 24 ln 4-5.

17. The parties signed an agreement on December 30, 2018 for the children to return to Belgium on July 10, 2019. See P1/J1, T1, pg.69 ln 23 – pg. 72 ln 15; T2, pg. 248 ln 15 – 23.

18. The parties demonstrated their shared intent for the children to return to Belgium on July 10, 2019. See P1/J1; T, pg. 68 ln 11 – pg. 69 ln 7.

19. The Petitioner was exercising his custody rights with the children in Belgium as he lived with them and the Respondent in Brussels; See T1, pg. 22 ln 23 – pg. 4 ln 5; T2, pg. 256 ln 8 – 10.

20. The Petitioner was exercising his custody rights while the children were in New Jersey from August 2018 to July 10, 2019, as he visited them on multiple occasions and went on vacation with them and the Respondent during this

9

time in the United States. See T1, pg. 78 ln 15 – pg. 80 ln 2; T1, 95 ln 16 – pg. 97 ln 2.

21. The Petitioner has continued to exercise his custody rights since July 10, 2019, visiting with the children in New Jersey and taking them on vacations including Disney World, despite the difficulties posed by the Covid 19 pandemic and the refusal of the Respondent to let the children travel to Europe when possible. See T1, pg. 92 ln 3 – pg. 95 ln 10.

22. The Respondent did not return the children to Belgium on July 10, 2019. See T2, pg. 245 ln 17 – pg. 247 ln 2.

23. The parties' children were nine and four years old on July 10, 2019. See T1, pg. 19 ln 2-3.

24. The Respondent understood the trip to New Jersey to be temporary if the Petitioner did not find employment in New Jersey. See R36, T2, pg. 249 ln 15-pg. 253 ln 19; T2, pg. 262 ln 2 – 17.

25. The Petitioner did not find employment in New Jersey from August 2018-July 10, 2019. See R78; T1, pg. 80 ln 3-pg. 81 ln 13; T1, pg. 82 ln 23 – pg 86 ln 23; T1, pg. 181 ln 6-pg. 182 ln 2; T2, pg. 260 ln 15 – 18.

26. The Respondent understood that the Petitioner would not agree to the children living permanently in New Jersey if he did not find employment in New Jersey. See T1, pg. 89 ln 17-pg. 91 ln 6; T1, pg. 178 ln 5-11; T2, pg. 236 ln 19-pg. 237 ln 9.

27. The Respondent sought legal counsel in February 2019 regarding the retention of the children in New Jersey before the Petitioner brought up the schooling solution in Brussels. See T2, pg. 254 ln5-pg. 255 ln 14.

28. The Petitioner made arrangements for the children to return to school in Belgium in March of 2019. See T1, pg. 46 ln 1-22; T1 pg. 75 ln 13 – pg. 78 ln 12; T2, pg. 240 ln 11-21.

29. The Respondent's employment, vehicle and living arrangements were all temporary from August 2018- July 10, 2019. See T1, pg. 60 ln 23- pg. 61 ln 7; T1, pg. 64 ln 4 – pg. 67 ln 14.

30. The Respondent filed for custody in the State of New Jersey, Superior Court, Bergen County, under the UCCJEA in May 2019, and the Court declined jurisdiction due to the unjustifiable conduct of the Respondent on August 2, 2019. The Respondent then appealed this decision to the Appellate Division, State of New Jersey. See T1, pg. 15 ln 19 – pg. 16 ln 3.

31. The Respondent filed for custody, when the Petitioner was visiting with the children in New Jersey on vacation with the Respondent in May of 2019, without advising the Petitioner at that time she was doing so. See T1, pg. 15 ln 19 – pg. 16 ln 3; T1, pg. 88 ln 5 – pg. 89 ln 13.

32. On April 21, 2020, the Petitioner filed a Hague Convention Petition in the United States District Court in the District of New Jersey. See P4a, T1, pg. 15 ln 19 – pg. 16 ln 3.

33. On May 11, 2020, the Respondent filed a Motion to Dismiss the Petitioner's Hague Convention Petition to the United District Court in the District of New Jersey. See T1, pg. 15 ln 19 – pg. 16 ln 3.

34. The Respondent did not, after a request by the Petitioner, allow the children to visit Europe in the summer of 2021.  See T2, pg. 242 ln 12 – 19.

35. The children have multiple options of attending school upon their return to Belgium including the International School of Brussels ("ISB"), the Lycee Francais and the local schools of Brussels, but the Petitioner will make arrangements for the parties' daughter to attend the same school, namely "ISB."  See T1, pg. 24 ln 6-pg. 25 ln 22; T1, pg. 42 ln 16 – pg. 44 ln 8; T1, pg. 97 ln 6 – ln 17; T2, pg. 243 ln 7 – 15.

36. The parties' daughter did not raise any objections to returning to Belgium, but only concerns about her fluency in French and friends in Belgium and New Jersey.  See T1, pg. 211 ln 3-15.

37. The parties' children's paternal grandparents are both retired physicians.  See T1, pg. 30 ln 18 – pg. 31 ln 16; T3, pg. 38 ln 11 – 13.

38. The parties' children's paternal grandmother cannot visit her grandchildren in the United States due to health issues.  See T3, pg. 39 ln 5-11.

39. The parties' children's paternal grandparents and their extended paternal family have not seen the parties' children since they left to go back to New Jersey in December of 2018.  See T1, pg. 31 ln 17 – 24; T1, pg. 68 ln 3-10; T3, pg. 37 ln 19-21; T3, pg. 40 ln 7-11; T2, pg. 241, ln 16-23.

40. The Petitioner is requesting the return of the children to Belgium. See T1, pg. 18, ln 16-19.

## IV.  LEGAL ARGUMENT

As to the law of this case on jurisdiction, the Hague Convention, habitual residence, affirmative defenses and governing standards, Petitioner, in part, relies on his Hague Convention Petition filed with this Court on April 21, 2020, Petitioner's Statement of Legal Issues and Governing Standards in the Joint Proposed Final Pre-Trial Conference Order of April 25, 2022 and his letter brief of April 24, 2022, incorporated herein by reference.

Petitioner's additional legal argument below focuses for the Court on specific recent case law at issue and on point with the decision before this Court to return the children to Belgium.

First, the issue of habitual residence and the return of the children to Belgium must be determined by this Court in the context of the "totality of the facts" of the Petition. In *Monasky v. Taglieri*, 140 S.Ct. 719 (2020), the Supreme Court held that a child's habitual residence depends on where the child regularly resides. However, the inquiry to determine residence is based on the context of a case— a totality of circumstances standard.  In the instant case, this would include the shared intent of the parties in their written agreement of December 30, 2018, the temporary nature of the trip to New Jersey from the perspective of the children and the trips settled purpose as revealed by the actions of their parents, paternal family members and friends in Belgium. In addition, clearly, the children had regularly resided in their home in Brussels for the entirety of their lives prior to their trip in August 2018 to New Jersey.

**In *Romanov v. Soto*, (3:21-cv-779-MMH-MCR, U.S.D.C., M.D.Fla., Feb.7, 2022), importantly decided AFTER *Monasky*, in a case factually similar with two children of disparate ages, despite interviews of the children objecting to their return to Canada from**

13

**the United States,** the Court, held that "it is appropriate to exercise its discretion to return both of the Children to Canada together. To do otherwise in this case would reward the wrongful retention and "signal that a parent might escape the Convention by running out the clock until the wrongfully retained child became accustomed to her new home." *See Garcia v. Pinelo,* 808 F.3d 1158, 1169 (7th Cir. 2015). "Here, to the extent the Children have developed an objection to return, it is predominately based on the happiness they have found in California. The Children like their home, the climate, their friends and their schools in California. It bears noting, however, that the Children did not move to California until August 21, 2021, five months after they should have returned to Canada. Moreover, any preference stated by the Children during their November 17, 2021 interview for remaining in California is based on attachments formed in only the three months they had been living there, all while this lawsuit was pending. **Refusing to return the Children under these circumstances would reward the decision to wrongfully retain the Children and encourage parents to evade or extend Hague proceedings for as long as possible in the hopes that a child will grow attached to her new home and object to repatriation.**" *See Pinelo,* 808 F.3d at 1169; *Tsai-Yi Yang*, 499 F.3d at 280.

In the instant case, the Respondent should not be rewarded for her wrongful retention of the children and her prolonging the litigation in this matter in the hopes that this Court would find that the parties' daughter, more specifically, grew attached to New Jersey. The parties' daughter alone should not be in a position to make the decision for everyone else, including the parties' younger son, and her parents, especially when the parties clearly demonstrated their "shared intent" that the children return to Belgium. It was also the daughter's clear understanding prior to leaving that her stay would be temporary ( 1 year) to manage the schooling issue in Belgium.

14

A. PROPOSED CONCLUSIONS OF LAW

This Court should conclude the following conclusions of law:

1. **This Court has jurisdiction pursuant 22 U.S.C. § 9003(a), which provides that "[t]he courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Hague Convention."**

2. **The Petitioner has proven, under the Hague Convention, by a preponderance of the evidence that the children's habitual residence was in a signatory State (Belgium) and that the children were wrongfully retained.** *Karpenko*, 619 F.3d at 263 (citing *Karkkainen v. Kovalchu*k, 445 F.3d 280, 287 (3d Cir.2006).

3. **The retention of the parties' children was wrongful under Hague Convention Article 3, as it was in breach of the Petitioner's custody rights where the children were habitual residents immediately before the retention, namely Belgium; and, at the time of the retention the Petitioner did and would have exercised his custody rights but for the retention.** Article 3 of the Hague Convention.

4. **The Petitioner has made out a prima facie claim for relief under the Hague Convention.** *Karkkainen*, 445 F.3d at 287.

5. **The Respondent has not met her burden to assert an affirmative defense, as the children made no objection to their return and there was no grave risk shown to the children upon their return by clear and convincing evidence**. *Karpenko*, 619 F.3d at 263 n.3; *see also* 22 U.S.C.A. § 9003(e)(2) (setting forth the burdens for each affirmative defense). In *Tsai-Yi Yang*, 499 F.3d 259, 279,

15

though the ten-year-old child did express some objections to returning to Canada, they were "not necessarily sufficient" to meet the exception. In the instant case, the younger child has voiced no objection and the oldest child only voiced concerns, certainly not sufficient to meet the exception. As to any grave risk upon return, it is the height of hypocrisy for the Respondent to even suggest it, there is no evidence of it, no expert testimony. And, certainly it is of less risk than what the Respondent has exposed the children to by wrongfully retaining the children here from their father, their home that they have lived in all of their lives and with little to no contact with their paternal family in France and their friends and schoolmates in Belgium.

6. **The date of wrongful retention by the Respondent was July 10, 2022.** In the Third Circuit, courts have found that **the retention date occurs when the travelling out of state parent fails to return the child.** *See Karkkainen*, 45 F.3d at 290; *Paulus v. Cordero*, No. 12-986, 2012 U.S. Dist. LEXIS 90374, at *8 (M.D. Pa. June 29, 2012).

7. **On the date of the wrongful retention, the children, aged three and nine, were too young to have acclimatized to the State of New Jersey.** In *Tsai-Yi Yang*, the District Court found, and the Court of Appeals affirmed, that a ten-year-old child was not of sufficient age or maturity for her views to be appropriately considered. *Tsai-Yi Yang*, 499 F.3d 259, 279.

8. **The parties last shared parental intent was to continue their established residence in Belgium, inclusive of their agreement of December 30, 2018.** With a young child, the shared parental intent **is generally expressed as the last**

16

**shared intention of the parents** to establish a residence for the child, and is ideally based upon empirical evidence of historical actions taken by the parents." *Saltos v. Severino*, (D.N.J. July 25, 2018), Civil Action No.: 18-8704, (JLL). To find **evidence of a shared intent**, the court has to look to the spectrum of parental behavior, **from written agreements to actions**. See *Whiting v. Krassner, 391 F.3d 540 at 542 (3d Cir. 2004*, 391*)* (finding that the parties' signed agreement to raise the child in Canada for two years and the parents' initial compliance controlled her habitual residence), and in *Feder v. Evans-Feder*, 63 F.3d 217, 224 (3d Cir. 1995)

9. **The written agreement of the parties of December 30, 2018 is evidence of a shared intent that controlled the children's habitual residence to be Belgium.** To find **evidence of a shared intent**, the court has to look to the spectrum of parental behavior, **from written agreements to actions**. See *Whiting v. Krassner, 391 F.3d 540 at 542 (3d Cir. 2004*, 391*)* (finding that the parties' signed agreement to raise the child in Canada for two years and the parents' initial compliance controlled her habitual residence), and in *Feder v. Evans-Feder*, 63 F.3d 217, 224 (3d Cir. 1995).

10. **The children's perspective of their time in New Jersey from August 2018 to July 10, 2019 was that the settled purpose of the trip to New Jersey was temporary.** *Gitter v. Gitter*, 396 F.3d 124, 132–33 (2d Cir. 2005) (determining that parental intent must be examined in order to better understand objective evidence of the child's perspective); *Silverman v. Silverman*, 338 F.3d 886, 898 (8th Cir. 2003) (holding that the lower court should have examined both the

17

settled purpose of the move from the children's perspective **as well as both parents' intentions at the time of the move** to Israel); *Feder v. Evans-Feder*, 63 F.3d 217, 224 (3d Cir. 1995) (examining both the child's perspective regarding settled purpose of the family's move **and** the parent's current intentions regarding habitual residence).

11. **Less than one year had elapsed from the date of the wrongful retention of July 10, 2019 and the filing of the Petitioner's petition on April 21, 2020, therefore, the "well settled exception" does not apply to this case and this Court under Article 12 of the Hague Convention must order the return of the children to Belgium.** Pursuant to Article 12 of the Hague Convention, which contains the "well-settled" exception, if a child has been wrongfully removed and "at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, *a period of less than one year* has elapsed from the date of the wrongful removal **or retention**," **the Court shall order the return of the child.** Hague Convention, Article 12 (emphasis added). However, the Court may choose not to return the child, "where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding [sentence]," **and** it is demonstrated that "the child is now settled in its new environment." *Id*. The one-year period articulated in the exception is not subject to equitable tolling. *Lozano v. Montoya Alvarez*,134 S.Ct. 1224, 1231(2014).

12. **The habitual residence of the children was Belgium at the time of the wrongful retention.** The children had spent their entire lives in Belgium, prior to

18

the temporary year trip to New Jersey, were too young at the time of the wrongful retention to acclimatize to New Jersey, and the last **shared intent** and settled purpose of the parties' was clearly evidenced by the December 30, 2018 signed agreement for their children's return to Belgium on July 10, 2019.

V.   **CONCLUSION**

Based upon the foregoing reasons, Petitioner respectfully requests that the Court grant his Petition pursuant to the Hague Convention and Order the return of his children immediately to Belgium, their habitual residence before their wrongful retention by the Respondent.

Dated: May 24, 2022

Respectfully submitted,

/s/*Michael S. Green*
Michael S. Green, Esq.
Green & Associates, LLC
522 Route 18, Suite 5
East Brunswick, New Jersey 08816
Tel: 732-390-5900
Fax: 732-390-5901
green@msgreenlaw.com